### C. H. McMASTER v. B. F. CHILDRESS ET AL.
### No. 810.

1. **Probate Sale of Land Certificate of Foreign Volunteer—Consent of Next of Kin.**—Under the Act of January 14, 1841, forbidding the probate sale of land belonging to the estate of any foreign volunteer who had served in the army of Texas unless the administrator was next of kin, or the next of kin gave written consent thereto, which should be recorded before the order of sale was made, a probate sale of a land certificate issued in behalf of such volunteer, made without compliance with this act, is void, and is not validated by an assent of the heirs to the sale obtained and filed several years thereafter.

2. **Same—Attorney Acting for Heirs Not Named.**—A compromise agreement purporting to convey the interest of heirs in a land certificate executed by an attorney in fact, but which does not disclose their names nor identify them, is not binding on the heirs.

3. **Purchaser Pendente Lite—Abandonment of Suit—Costs.**—Suit was filed in 1860, but no action appears to have been had therein except the taking of depositions for plaintiff in 1874. Plaintiff died in 1878, and in 1893 his heirs suggested his death and filed an amended petition. *Held,* that the suit had been in effect abandoned, and that one who had in the meanwhile, and prior to the filing of such amend-

ment, purchased part of the land in controversy from the heirs of one of the defendants, was not a purchaser pendente lite so as to be chargeable with costs incurred prior to the time when by such amendment he was made a party; nor was he liable for the costs of his codefendants owning distinct interests in the land.

Appeal from Harris.   Tried below before Hon. S. H. Brashear.

*Russell W. Houk,* for appellant.—1.   The fact that a suit was filed in 1860, that all or both the plaintiffs died in 1876 and 1878, and that the new plaintiffs made themselves parties in 1893, and that all the attorneys but one had died out of the case, does not warrant the conclusion that the suit has been pending ever since 1860.   Punchard v. Delk, 77 Texas, 104; 12 Am. and Eng. Encyc. of Law, 543.

2.   Land granted to the heirs of a deceased soldier from a foreign country, under certain conditions, is subject to administration, and where a Probate Court assumed jurisdiction over any property of an estate, the presumption is that all conditions existed to give it jurisdiction.   Vogelsang v. Dougherty, 46 Texas, 466; Martin v. Robinson, 67 Texas, 368, 379; Burdett v. Silsbee, 15 Texas, 605.

3.   Where a suit was filed in 1860, and no attempt was made to prosecute it to effect until 1893, and defendant McMaster purchased previous to that time (1893), the presumption is, that the cause was abandoned by the original plaintiffs.   Punchard v. Delk, 77 Texas, 104; Wortham v. Boyd, 66 Texas, 401.

*James R. Masterson* and *Stewart, Stewart & Lockett,* for appellees.

1.   The estates of deceased soldiers who were not citizens, but who were volunteers from foreign parts and who died in the Texas army, were not subject to administration or sale, except under circumstances not appearing in this case.   Todd v. Masterson, 61 Texas, 619; Hart. Dig., arts. 986, 1053, 1054.

2.   The bounty land sued for was a pure gratuity, and not subject to administration or sale for debts of George W. Childress.   Todd v. Masterson, 61 Texas, 619.

PLEASANTS, Associate Justice.—The appellant makes the following statement of the nature and result of this suit:

"In the year 1860 B. F. Childress and Mary Benton brought a suit in the District Court of Harris County, Texas, against D. W. C. Harris, Lewis B. Harris, and John Day, for the purpose of setting aside and avoiding the sale of the 1920 acres tract of land, the subject matter of this suit, fully described in plaintiff's petition, made by W. D. C. Harris, as the administrator of the estate of George W. Childress, deceased, in the year 1843, to Lewis B. Harris, and the sale subsequently made by said Lewis B. Harris of 1000 acres of said tract to John Day.   Both B. F. Childress and Mary Benton died in the years 1876 and 1878, respectively, leaving the suit without plaintiffs until

October 2, 1893, when the present plaintiffs suggested the death of the original plaintiffs, and filed their petition, which they called their first amended original and first supplemental petition, and claimed all rights under the original petition, and alleged, in substance, that the administration through which the defendants claim was fraudulent and void; that plaintiffs are the owners of the property, and that defendants are setting up some sort of a claim, which is a cloud upon the title of plaintiffs, but do not allege that defendants are in possession, nor that defendants ever evicted plaintiffs, and pray for a removal of the cloud, a cancellation of the deeds to defendant, and for a writ of possession; and that defendant McMaster, who claims 1000 acres as purchaser from John Day, and Fritz Schroeder and Louis Kriggi be made defendants, and cited according to law.

"The record does not show that any attempt was made by plaintiffs to prosecute their cause to effect from the year 1860 to 1893; nor that the cause had not been abandoned for more than thirty years before the filing of this suit. Defendant McMaster, on the 21st day of May, 1894, filed his first amended answer, demurring to plaintiffs' petition generally, and especially excepting to it; first, because it is not properly indorsed; second, because it does not designate or describe the instrument it is to supersede; third, it can not be ascertained whether it is an amended petition, a supplemental petition, or an original petition; and because it is vague, indefinite, and uncertain. Defendant further pleaded the two, five, and ten years' statutes of limitation, stale demand, general denial, and not guilty. The court overruled the demurrer and special exceptions, and although they were insisted upon and argued at length, the court failed to note his ruling on his docket, and has since refused to do so, though specially requested.

"On the trial of the cause before the court, plaintiffs introduced in evidence the patent to the aforesaid land to the heirs G. W. Childress, and attempted to show that the present plaintiffs were the heirs of said G. W. Childress. Defendant offered and introduced in evidence a certified copy of the probate proceedings in the matter of the estate of George W. Childress, deceased, from the records of Harris County, Texas, showing an administration on said estate, and a sale of the property aforesaid to said Lewis B. Harris, under whom defendant McMaster claims. Defendant offered in evidence deeds making a complete chain of title from Lewis B. Harris to said defendant McMaster, but the court excluded them, because he held that the aforesaid administration was void and fraudulent. Defendant also introduced in evidence a copy of a written agreement, filed in said Probate Court and forming part of the transcript therefrom heretofore referred to, between the attorney in fact of the heirs of said George W. Childress, deceased, and D. W. C. Harris, the administrator of Childress' estate, in which the attorney of the heirs, in consideration of the headright certificate, granted the aforesaid 1920 acres tract to D. W. C. Harris, and compromised all claims in regard to same.

"The court rendered judgment in favor of plaintiffs against said McMaster for the 1000 acres claimed by him and for the whole amount of the costs, including an attorney's fee of $200 allowed an attorney to represent the nonresident defendants, and ordered writs of possession issued, from which judgment appeal was taken."

- Both parties, plaintiff and defendant, deraign title from one G. W. Childress, deceased; the appellees by inheritance, and the appellant by purchase. The land in controversy was sold in 1843 by D. W. C. Harris, as the administrator of the estate of G. W. Childress, under the order of the Probate Court of Harris County; and under that sale the appellant claims title by regular chain of transfer; and the controlling question in the case is, was or was not that sale void. If G. W. Childress, the grantee of the land, who died in January, 1836, in the county of Refugio, was at the time of his death a volunteer from a foreign country serving in the army of the Republic of Texas, by the second section of an Act of the Congress of the Republic of Texas, passed on the 14th of January, 1841, the Probate Court was prohibited from ordering a sale of land belonging to his estate, unless the administrator of the estate was the next of kin of the deceased, or unless the next of kin gave in writing their consent for an order of sale, and such consent was recorded in the court before the order was made. The court below found that G. W. Childress was, at the time of his death, a soldier serving in the army of Texas, and that he was a volunteer from the State of Tennessee; and our conclusion is, that this finding of fact by the court is amply sustained by the evidence.

The trial court, as a conclusion of law, also found, as we have seen from appellant's statement of the nature and result of the suit, that the administration upon the estate of the deceased soldier was void. It is not necessary for the decision of this appeal to determine whether or not the administration upon the estate was void. It may have been valid, and the order of sale null and void. The appellant insists that neither the administration nor the order of sale is void; that the Probate Court being a court of general jurisdiction, every presumption must be indulged in support of its jurisdiction, and of the validity of its orders and decrees. But presumptions are indulged only in the absence of evidence, and not against evidence. The administration, as appears from the record, was granted to Harris, not as the next of kin of the deceased, but as an alleged creditor of his estate. Two administrations were granted by the Probate Court of Harris County upon this decedent's estate. When the first was granted, in the year 1838, Harris, the second administrator, was the clerk of the court, and his claim as a creditor of the estate is based upon services rendered in his official capacity under the former administration. The Act of January 14, 1841, has been several times the subject of discussion by our Supreme Court, and it is settled that its prohibition against the sale of a soldier's land includes land certificates.

There is in the record of the administration what purports to be an agreement executed in 1851, several years after the sale had been made, between the administrator, Harris, and one C. M. Horton, who represents himself to be the attorney in fact for Childress' heirs, by which the said administrator agrees to convey to said Horton, for said heirs, his right and title to land certificate number 1036, for a third of a league of land, and to close the administration as soon as possible, and to pay all costs thereof; and Horton, for said heirs, agrees to relinquish and quitclaim unto said administrator all claims whatsoever which said heirs may have in bounty land of said Childress, deceased. This agreement appellant contends should be considered as sufficient evidence of the consent of the heirs to the sale of the land made by the administrator. To this proposition we can not assent. The agreement purports to be made by an attorney in fact of the heirs of Childress, but it does not declare who the heirs are. It in no way identifies the plaintiffs, or any one of them, as the person or persons whom Horton was assuming to represent; and if therefore the instrument, as appellant insists it does, proves its execution by reason of its antiquity, its recitals do not prove the consent of the appellees, or of those through whom they trace their heirship, to the sale of the land. Besides, the instrument shows the agreement between Horton and the administrator was entered into some three years after the sale was made. The statute required the probate record to show the facts which it made necessary to the validity of the order of the court directing the sale of land belonging to the soldier's estate; and the facts necessary to make valid the order of sale, as we have seen, were, first, the consent of the heirs; second, this consent must be shown to the court by documentary evidence; and third, the document relied on for this purpose must be recorded by the court, the court being satisfied of the genuineness of the same before making the order. The probate record of the administration of Childress' estate does not show these necessary facts, and we are therefore of the opinion that the sale under which appellant deraigns title was and is null and void; and that the court below did not err in excluding appellant's evidence of title and in rendering judgment for the land for appellees. Hart. Dig., arts. 1053, 1054; Harris v. Graves, 26 Texas, 577; Duncan v. Neal, 49 Texas, 612; Martin v. Robinson, 67 Texas, 377.

But while we think the judgment awarding the land in controversy to appellees is correct, we are of the opinion that the court erred in charging all the costs incurred in the litigation, from the institution of the suit in 1860 by B. F. Childress and Mary Benton, to appellant. These parties died respectively in 1876 and 1878; and so far as the record discloses, no proceedings were had in the case from 1860, save to take the depositions of witnesses for plaintiffs in 1874, until the appellees made themselves plaintiffs in the suit, in 1893; and prior to this time appellant had purchased 1000 acres of the land. Under these facts, the suit of B. F. Childress and Mary Benton must be held

to have been abandoned; and hence the appellant is not a purchaser pendente lite. The appellant should be chargeable only with the costs incurred by him in defending the suit, and the costs incurred by appellees in bringing him into court and prosecuting their suit against him. He is not chargeable with the costs incurred in the prosecution of the suit against either of the defendants Schroeder or Kriggi, against whom appellees took agreed judgment; nor is he liable for the costs incident to citing by publication the defendants Harris and Day, or for the fee allowed by the court to the attorney appointed to represent these nonresident defendants. The judgment will therefore be reformed and here rendered; and the appellant, not having made a motion to correct the judgment in the lower court, must be charged with the costs of appeal.

*Affirmed as to land.*
*Reformed as to costs.*

Delivered March 21, 1895.